UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHAINE DENSLOW,

      Plaintiff,

v.                                                        Case No: 8:18-cv-2424-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## ORDER

      Plaintiff, Shaine Denslow, seeks judicial review of the denial of his claim for supplemental security income ("SSI").  As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and proper legal standards, the decision is reversed and remanded for further consideration.

## BACKGROUND

### A.      Procedural Background

      Plaintiff filed an application for supplemental security income on March 6, 2015.  (Tr. 211–16.)  The Commissioner denied Plaintiff's claims both initially and upon reconsideration.  (Tr. 138–39, 144–45.)  Plaintiff then requested an administrative hearing.  (Tr. 149–50.)  Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified.  (Tr. 34–59.)  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits.  (Tr. 15–26.)  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied.  (Tr. 1–3.)  Plaintiff then

timely filed a Complaint with this Court.  (Dkt. 1)  The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B.**     **Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1985, claimed disability beginning on September 1, 2004.  (Tr. 211.)  Plaintiff received a special education high school diploma.  (Tr. 42.)  Plaintiff has no past relevant work experience.  (Tr. 24.)  Plaintiff alleged disability due to a learning disability, ADHD, depression, and "[anti-psychotic]."  (Tr. 263.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since March 6, 2015 the application date. [1]  (Tr. 17, 24.)  After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: "schizoaffective disorder; bipolar disorder; attention deficit hyperactivity disorder (ADHD); depressive disorder."  (Tr. 17.)  Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18.)  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels as defined in 20 CFR 404.1567(b) and 416.967(b), but with the following nonexertional limitations: the claimant could not work with the general public, could have frequent contact with supervisors and coworkers, would be limited to routine repetitive tasks with no assembly line production type of quotas, and could maintain concentration for 2 hours of time.

(Tr. 20.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the

---

[1] The ALJ considered Plaintiff's disability from the application date.  (Tr. 15.)

intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the record. (Tr. 21.)

Regarding his work history, the ALJ determined that Plaintiff did not have any past relevant work. (Tr. 24.) Considering Plaintiff's background and RFC, the vocational expert ("VE") testified that Plaintiff could perform jobs existing in significant numbers in the national economy, such as change house attendant, laundry worker, and routing clerk. (Tr. 25.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 25.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20

C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

# ANALYSIS

Plaintiff challenges the ALJ's decision on the grounds that the ALJ substituted his opinion for medical opinion evidence by (1) rejecting the medical opinion of Dr. Lawrence Pasman and (2) giving no weight to the opinions of the State Agency consultants regarding the claimant's mental functioning.

## A.    Opinion Evidence

In evaluating medical evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).  When determining how much weight to afford an opinion, the ALJ considers (1) whether there is an examining or treatment relationship and the nature and extent thereof; (2) whether the source offers relevant medical evidence to support the opinion; (3) consistency with the record as a whole; (4) the specialization of the source, if any; and (5) any other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(1)–(6).  Importantly, however, while all medical opinions must be considered, including opinions regarding a claimant's RFC, a claimant's RFC is a decision "reserved to the Commissioner."  20 C.F.R. § 404.1527(d)(2); *Denomme v. Comm'r of Soc. Sec.*, 518 F. App'x 875, 877-78 (11th Cir. 2013).

This standard applies equally to the opinions of treating and non-treating physicians. *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015).  Generally, the opinions of a non-treating or non-examining physician are given less weight than those of examining or treating physicians and, standing alone, do not constitute substantial evidence.  *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009).  However, state agency medical consultants are considered experts in the Social Security disability evaluation process, and their opinions are entitled to great

weight if supported by and consistent with the evidence of record.  20 C.F.R. § 416.927(e)(2)(i); *Stone v. Comm'r of Soc. Sec.*, 586 F. App'x 505, 513 (11th Cir. 2014).

### 1.    Medical Opinion of Dr. Pasman

Dr. Lawrence Pasman conducted a psychological consultative examination on May 17, 2017.  (Tr. 559.)  Dr. Pasman found Plaintiff to have "bipolar II disorder with psychotic features, cannabis use disorder, and borderline personality disorder."  (Tr. 23.)  As a result, Dr. Pasman found that Plaintiff had "slight impairment in understanding and memory; was below average when compared to similar aged individuals in terms of concentration, persistence, and pace; and said the claimant 'appeared to have adapted deficits in social-interpersonal skills.'"  (Tr. 23.)  The ALJ gave partial weight to Dr. Pasman's opinion and, in particular, gave little weight to Dr. Pasman's "finding of marked limitation in the ability to interact appropriately with supervisors, coworkers, and the general public."  (Tr. 23.)

Plaintiff argues that the ALJ rejected the opinion of Dr. Pasman but did not point to a conflicting medical opinion to support his conclusion.  (Dkt. 20 at 6.)  However, it is strictly the ALJ's duty to determine the claimant's RFC.  *See Denomme*, 518 F. App'x at 877–78.  While opinion evidence is helpful, it is not dispositive.  *Carson v. Comm'r of Soc. Sec. Admin.*, 300 F. App'x 741, 743 (11th Cir. 2008); *see also Williams v. Comm'r, Soc. Sec. Admin.*, 580 F. App'x 732, 734 (11th Cir. 2014) (explaining that "the ALJ may reject the opinion of *any* physician when the evidence supports a contrary conclusion") (emphasis in original).  The ALJ does not impermissibly substitute his own opinion by deciding a claimant's RFC.  *See Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) (holding that "the ALJ did not 'play doctor' in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC"); *Spivey-Adams v. Acting Comm'r of Soc. Sec.*, No. 3:16–CV–1134–

J–PDB, 2017 WL 4297246, at *12 (M.D. Fla. Sept. 28, 2017) (holding that the ALJ "fulfilled her duty under the regulations to assess Spivey-Adams's RFC in light of all the evidence in the record"). Thus, the ALJ was not required adopt all of Dr. Pasman's conclusions. *See Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 834 (11th Cir. 2011) ("A doctor's opinion on dispositive issues reserved to the Commissioner . . . is excluded from the definition of a medical opinion and is not given special weight, even if it is offered by a treating source.").

Substantial evidence supports the ALJ's decision to give partial weight to Dr. Pasman's opinion. Initially, the ALJ is not required to give the opinions of one-time examiners, such as Dr. Pasman, any special deference or consideration. *See* 20 C.F.R. § 416.927(c)(2); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *see also Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (holding ALJ does not have to defer to opinion of doctor who conducted a single examination). Additionally, the ALJ articulated specific reasons for giving less weight to Dr. Pasman's opinion. *See D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 948 (11th Cir. 2010) (affirming "because the ALJ articulated at least one specific reason for disregarding the [treating physician's] opinion and the record supports it").

The ALJ found Dr. Pasman's conclusion regarding Plaintiff's limitations in interacting with others to be unsupported by Dr. Pasman's own examination, *see Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("We have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records."), and to be inconsistent with the other evidence of record, *see* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). These findings are supported by substantial evidence.

The ALJ referenced several treatment records which reflect that Plaintiff has held several jobs in "fast food, cashier, assembly, carpentry" and was fired for reasons not related to his interactions with others in the workplace. (Tr. 44–46, 54, 411.) Treatment records from the Plaintiff's regular mental health providers also showed improvement in emotional rationalization and general affect with medication management. (Tr. 394, 414, 482, 493, 512.) Dr. Pasman's own notes also included evidence inconsistent with his ultimate conclusion that Plaintiff would have marked difficulty interacting appropriately with others. He noted that Plaintiff "had no difficulty in establishing and maintaining emotional rapport," and that Plaintiff's affect was "generally appropriate" during the evaluation. (Tr. 562.)

Because substantial evidence supports the ALJ's decision to give partial weight to Dr. Pasman's opinion, this Court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Secretary." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *see also Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) ("Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence.")

### 2.    State Agency Consultants' Opinions

Plaintiff also argues that the ALJ erred by giving no weight to the opinions of the State Agency consultants, Dr. Hodes and Dr. Grand, regarding the Plaintiff's mental functioning, due to a change in the Revised Medical Criteria for Evaluating Mental Disorders. (Dkt. 20 at 7.) On September 26, 2016 the Social Security Administration published the final rules regarding the revised medical criteria for evaluating mental disorders, which went into effect on January 17, 2017. *Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138-1, 2016 WL 5341732 (Sept. 26, 2016). The final rules applied to all cases pending on or after that date,

and to those subsequently filed. *Id.* In relevant part, the revision changed the "paragraph B" criteria, which are used to assess whether a claimant has a severe impairment which meets or equals the 12.00 Listings for Mental Disorders. *Id.* "Under the prior paragraph B criteria, the ALJ examined whether the claimant was limited in his or her (1) activities of daily living; (2) social functioning; or (3) concentration, persistence, or pace; and (4) whether claimant experienced episodes of decompensation." *Montgomery v. Comm'r of Soc. Sec.*, No. 3:17-CV-00617, 2019 WL 1427560, at *6 (W.D. Ky. Mar. 29, 2019) (citing 20 C.F.R. Pt. 404, Subpt. P, § 12.00C (2016); 20 C.F.R. §§ 404.1520a, 416.920a). "However, under the new paragraph B criteria, an ALJ evaluates the claimant's (1) ability to understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself." *Id.* (citing 20 C.F.R. Pr. 404, Subpt. P, § 12.00E(1)–(4) (2017); 20 C.F.R. §§ 404.1520a, 416.902a (2017)).

Because of this change, the ALJ found the revised criteria to be "materially different" and wholly rejected the State Agency consultants' opinions. (Tr. 24.) But contrary to the ALJ's assertion, the revised criteria are not "materially different" from the former criteria. There is a substantial overlap in the former paragraph B criteria and the current paragraph B criteria such that the ALJ should have considered the State Agency consultant's findings in his analysis. *See Montgomery*, 2019 WL 1427560 at *7 (holding that "a close examination of the new versus old paragraph B criteria indicates significant areas of overlap such that an evaluation of an individual under the old criteria would inform and assist in evaluating an individual under the new criteria"); *Carbone v. Saul*, No. 18-cv-10476-RGS, 2019 WL 4454453, at *12 (D. Mass. Aug. 29, 2019) ("There are significant areas of overlap between the new and old 'paragraph B' criteria, such that an evaluation under the old criteria would inform and assist in an evaluation under the new criteria.").

In *Montgomery*, the Plaintiff's medical evaluations were undertaken pursuant to the old criteria. By the time the application was before the ALJ, the new criteria were in effect and thus binding on the ALJ's determination. Because the evaluations were done under the appropriate paragraph B criteria in effect at the time of the examinations, the court found that the ALJ properly applied the new criteria to those examinations in his decision. 2019 WL 1427560 at *6–7 (explaining that "[g]iven the overlap, it was proper for the ALJ to rely on the prior opinions . . . under the old criteria to make a determination under the new criteria"). The totality of the evidence considered by the ALJ definitively "include[ed] the evaluations done . . . under the old criteria." *Montgomery*, 2019 WL 1427560 at *7; *See Hudson v. Saul*, No. CV 118-065, 2019 WL 3938448, at *5 (S.D. Ga. Aug. 20, 2019) (holding that the AC correctly "analyze[d] the Listings as revised . . . specifically addressing whether Plaintiff meets the 'Paragraph B' mental functioning criteria of the new Listings" in making his determination although the AC relied heavily on psychological evaluations administered in 2012, prior to the change); *Lynesha S. D. v. Berryhill*, No. 18-2339, 2019 WL 1453972, at *3 (D. Kan. Apr. 2, 2019) (stating that when determining a case pending on January 2017 "it was these new paragraph B criteria the ALJ applied and discussed in evaluating the severity of Plaintiff's mental impairments and whether they meet or medically equal a Listing at steps two and three of his evaluation").

Although the evaluations by the State Agency consultants appropriately applied the criteria in effect at the time, the ALJ was required to apply the new criteria. But because of the substantial overlap, the consultants' opinions provide medical evidence relevant to the ALJ's determinations under the new criteria. For example, Dr. Hodes and Dr. Grand both found Plaintiff to have moderate limitation in his "ability to understand and remember detailed instructions" (Tr. 89, 113), which is directly relevant, and contrary, to the ALJ's finding that, under the new paragraph B

criteria, Plaintiff has only "mild limitations in understanding, remembering, or applying information." (Tr. 19.) As such, the ALJ erred in failing to consider the opinions of the State Agency consultants. *See Winschel*, 631 F.3d at 1179 (explaining that "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor"); *Wasser v. Comm'r of Soc. Sec.*, No. 6:12–cv–1399–ORL–31DAB, 2014 WL 116988, at *5 (M.D. Fla. Jan. 13, 2014) (quotations omitted) ("Although a consultative examiner who examines a claimant on only one occasion is not entitled to [the] deference of a treating physician, under *Winschel*, the ALJ still must set forth with particularity the weight he assigned to this opinion and the rationale for the rejection of the most significant findings.").

Further, although the paragraph B criteria assist in "evaluating the severity of the claimant's mental impairments at step two," *McMahon v. Comm'r, Soc. Sec. Admin.*, 583 F. App'x 886, 888 (11th Cir. 2014), the ALJ is also "required to consider all impairments, regardless of severity, in conjunction with one another in performing the *latter steps* of the sequential evaluation." *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (emphasis added). An ALJ's failure to consider the combination of a claimant's impairments requires reversal. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–69 (11th Cir. 2019) ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC."); *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985) (holding that failure to consider a claimant's impairments in combination "requires that the case be vacated and remanded for the proper consideration"). Because the ALJ wholly rejected the opinions of the State Agency consultants, the ALJ also failed to properly consider the opinions as evidence of impairments in formulating the RFC. *See Schink*, 935 F.3d at 1269 ("[T]he ALJ's 'failure . . . to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been

conducted mandates reversal' in its own right.") (quoting *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).

Thus, the Court "cannot say that the failure to address [the State Agency consultants' opinions] was harmless without re-weighing the evidence and engaging in conjecture that invades the province of the ALJ." *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 592 (11th Cir. 2006) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) (finding that because the ALJ did not consider certain factors "and their impact on his ultimate conclusion as to Moore's RFC," the court could not "even evaluate the Commissioner's contention that the ALJ's error was harmless")); *see also Baez v. Comm'r of Soc. Sec.*, 657 F. App'x 864, 870 (11th Cir. 2016) ("We cannot say that the ALJ's error was harmless when the ALJ failed to discuss an examining physician's opinion . . . as the error could have altered Baez's RFC.").

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on February 11, 2020.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record